

FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 7 2021

Kevin P. Weimer, Clerk
By
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AZIZ CHOUKRI | Criminal Indictment<br><br>No.<br><br>1:21-CR-0341 |

THE GRAND JURY CHARGES THAT:

### COUNTS ONE THROUGH TWENTY-SEVEN
*(Wire Fraud — 18 U.S.C. § 1343)*

1. On or about June 30, 2016 through on or about December 31, 2018, the exact dates being unknown to the Grand Jury, in the Northern District of Georgia, the defendant, AZIZ CHOUKRI, knowingly devised, intended to devise, and participated in a scheme to defraud A.A., and to obtain money and property from A.A., by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts.

*The Scheme to Defraud*

2. The object of the scheme was for defendant CHOUKRI to unjustly enrich himself at the expense of A.A. It was a part of the scheme that, at all times material to the Indictment:

3. CHOUKRI planned to form, and then did form, a music production company called Spiritual Melody.

4. CHOUKRI befriended A.A., an elderly man, and soon after befriending him, convinced A.A. to invest in CHOUKRI's music company.

5. To convince A.A. to invest in CHOUKRI's company, CHOUKRI

told A.A. that the business posed little financial risk and that A.A. would receive a five percent commission on his investment, and if, at any time, A.A. wanted to withdraw his investment, CHOUKRI would refund the investment, as well as pay A.A. an additional one million dollars.

6. From at least beginning June 30, 2016, through at least August 17, 2017, A.A. liquidated his retirement savings and paid CHOUKRI via checks. A.A. believed that his investment in CHOUKRI's business would be used entirely for business purposes.

7. From approximately June 2017 through April 2018, when A.A.'s retirement savings began to dry up, CHOUKRI convinced A.A. to open credit cards in A.A. and Spiritual Melody's name because, CHOUKRI told him, A.A.'s credit was better than CHOUKRI's and Spiritual Melody needed the credit cards to continue operating its business.

8. CHOUKRI missed payments for these credit cards, however, and A.A.'s credit declined.

9. When it became more difficult to use the business credit cards that A.A. opened for him, CHOUKRI, beginning in or about May 2018, through in or about September 2018, visited A.A. at A.A.'s home — often at night and with a Square payment device — and began charging A.A.'s personal credit card to the Spiritual Melody checking account. CHOUKRI would not leave A.A.'s home until A.A. paid the money, and A.A. was often scared during these interactions. CHOUKRI told A.A. that the payments were necessary to fund Spiritual Melody's business expenses.

10. While CHOUKRI paid some Spiritual Melody business expenses, he used

2

the vast majority of A.A.'s money to enrich himself and his children, by, for example, purchasing lavish meals at restaurants; staying at lavish hotels; purchasing medical and dental services; paying for his children's tutoring expenses; and purchasing groceries, clothes, and car services.

11. Eventually, A.A. became suspicious and began requesting that CHOUKRI return A.A.'s investment money as promised. CHOUKRI told A.A. that CHOUKRI would pay A.A. all of the money owed him, but CHOUKRI never did. To stall, CHOUKRI wrote A.A. checks that, ultimately, bounced.

12. Also during the course of the scheme, CHOUKRI told A.A. that CHOUKRI would fix the elderly man's car, took the car, and did not return it for approximately one year. During that time, CHOUKRI told A.A. that the car was being repaired; in reality, however, CHOUKRI's son was using A.A.'s car.

13. While Choukri lived lavishly off of A.A.'s money, A.A.'s financial security was ruined and his physical and mental health suffered dramatically.

## *Execution of the Scheme*

14. On or about each of the dates set forth below in Column B, for the purpose of executing or attempting to execute the scheme to defraud, with the intent to defraud, defendant CHOUKRI caused A.A. to write him checks that he deposited into his sons' and his bank accounts, and, in so doing, caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, as described below in Column D and Column E for each count:

| A | B | C | D | E |
|---|---|---|---|---|
| COUNT | DATE OF DEPOSIT | CHECK NUMBER | BANK ACCOUNT | CHECK AMOUNT |
| 1 | 9/6/16 | Check #4274 | SunTrust x4433 | $50,000.00 |
| 2 | 9/13/16 | Check #4276 | SunTrust x4433 | $50,000.00 |
| 3 | 10/3/16 | Check #4278 | SunTrust x4433 | $55,000.00 |
| 4 | 10/21/16 | Check #4279 | SunTrust x4433 | $55,000.00 |
| 5 | 11/16/16 | Check #4287 | SunTrust x4433 | $55,000.00 |
| 6 | 12/22/16 | Check #4288 | SunTrust x4433 | $55,000.00 |
| 7 | 1/19/17 | Check #4292 | SunTrust x4433 | $30,000.00 |
| 8 | 1/31/17 | Check #4293 | SunTrust x4433 | $20,000.00 |
| 9 | 2/22/17 | Check #4295 | SunTrust x4433 | $35,000.00 |
| 10 | 3/6/17 | Check #4297 | SunTrust x4433 | $35,000.00 |
| 11 | 3/9/17 | Check #4298 | SunTrust x9907 | $10,000.00 |
| 12 | 4/21/17 | Check #4303 | SunTrust x9907 | $50,000.00 |
| 13 | 5/30/17 | Check #4305 | SunTrust x9907 | $1,000.00 |
| 14 | 6/6/17 | Check #4307 | SunTrust x9907 | $10,000.00 |
| 15 | 8/19/17 | Check #4315 | SunTrust x9907 | $7,000.00 |

15. On or about the date set forth below in Column B, for the purpose of executing or attempting to execute the scheme to defraud, with the intent to defraud, defendant CHOUKRI caused A.A. to wire funds into CHOUKRI'S son's bank account, and, in so doing, caused to be transmitted by means of wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, as described below in Column C and Column D:

| A | B | C | D |
|---|---|---|---|
| COUNT | DATE OF WIRE | BANK ACCOUNT | WIRE AMOUNT |
| 16 | 3/23/17 | SunTrust x4433 | $3,000.00 |

16. On or about each of the dates set forth below in Column B, for the purpose of executing or attempting to execute the scheme to defraud, with the intent to defraud, defendant CHOUKRI caused A.A. to charge A.A.'s personal credit card via a Square payment device, and, in so doing, caused to be transmitted by

4

means of wire communication in interstate and foreign commerce certain writings, signs, signals, and sounds, as described below in Column B and Column C for each count:

| A<br>COUNT | B<br>DATE OF SQUARE TRANSACTION | C<br>AMOUNT |
|---|---|---|
| 17 | 6/8/18 | $2,800.00 |
| 18 | 6/11/18 | $2,700.00 |
| 19 | 6/12/18 | $1,500.00 |
| 20 | 6/13/18 | $1,300.00 |
| 21 | 6/28/18 | $1,700.00 |
| 22 | 7/1/18 | $1,100.00 |
| 23 | 7/2/18 | $3,500.00 |
| 24 | 7/9/18 | $1,100.00 |
| 25 | 7/11/18 | $2,511.11 |
| 26 | 7/12/18 | $1,511.00 |
| 27 | 7/17/18 | $1,500.00 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE PROVISION

17. The allegations contained in Counts One through Twenty-Seven of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture.

18. Upon conviction of one or more of the offenses alleged in Counts One through Twenty-Seven of this Indictment, the defendant, AZIZ CHOUKRI, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to said violations, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Twenty-Seven of this Indictment.

19. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the Court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be subdivided without difficulty;

the United States of America intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property.

A ___True_____ BILL

_Delbrow T. Brunso_
FOREPERSON

KURT R. ERSKINE
  *Acting United States Attorney*

*J. Elizabeth McBath*
J. ELIZABETH McBATH
  *Assistant United States Attorney*
Georgia Bar No. 297458

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

7